UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MASTABA, INC, a Philippine corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>LAMB WESTON SALES, INC., a Delaware corporation; LAMB-WESTON, INC., a Delaware corporation; CONAGRA FOODS, INC., a Delaware corporation; CONAGRA FOODS LAMB WESTON, INC., a Delaware corporation; MICHAEL L. NEAL, individually and as to his marital community, and KENNETH SOH, individually and as to his marital community,<br><br>        Defendants. | CASE NO. CV-13-5049-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LAMB WESTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF MASTABA'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND GRANTING PLAINTIFF MASTABA'S MOTION FOR RELIEF FROM LIMITATION ON DISCOVERY** |

A hearing occurred in the above-captioned matter on May 13, 2014. Plaintiff Mastaba, Inc. was represented by Kyle Silk-Eglit. Gerald Kobluk appeared on behalf of Defendants Lamb West Sales, Inc., Lamb-West, Inc., ConAgra Foods Lamb Weston, Inc., Michael Neal, and Kennth Soh (collectively, "Lamb Weston"). Before the Court was Lamb Weston's Motion for Partial Summary Judgment, ECF No. 32. Also before the Court without oral argument was Mastaba's Motion for Partial Summary Judgment, ECF No. 39, and Mastaba's Motion from Limitation on

ORDER - 1

Requests for Production, ECF No. 37. After reviewing the record and relevant authority and listening to the arguments of counsel, the Court was fully informed. For reasons set forth below, the Court denies in part and grants in part Lamb Weston's motion, grants Mastaba's motion for summary judgment, and grants Mastaba's Motion from Limitation on Requests for Production.

## I. Factual Background[1]

Mastaba handles the sale of frozen potato products in the Philippines. Lamb Weston produces potato products for sale worldwide. Between 1998 and 2012, Mastaba and Lamb Weston entered into letter agreements, each with a one-year term, from January 1 to December 31 of each year.[2] Under the one-year service agreements, Lamb Weston was Mastaba's sole supplier of potato products and paid Mastaba a fee per net pound of French fry sales.

---

[1] Undisputed facts are not cited to the record. When considering the summary judgment motions and drafting this background section, the Court 1) took as true all undisputed facts; 2) viewed all evidence and drew all justifiable inferences therefrom in non-moving party's favor; 3) did not weigh the evidence or assess credibility; and 4) did not accept assertions made that were flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

[2] The parties propose different descriptive names for the 2011 letter agreement. Lamb Weston refers to it as a "service agreement" while Mastaba a "Sales Representation Contract." For purposes of this order, it will be called a service agreement, although the name has no effect on this Court's analysis.

Beginning in 2011, Mastaba and Lamb Weston entered into discussions regarding their business relationship. On February 18, 2011, Lamb Weston sent two employees to the Philippines, new Director of Sales and Businesses Development Michael Neal and Sales Agent Kenneth Soh to meet with Mastaba. Mastaba alleges that at this meeting Lamb Weston encouraged Mastaba to commence capital investments, including a "test kitchen," hiring of additional sales staff, and creating a succession plan. ECF No. 49 ¶ 10. Mastaba contends that Patrick Johnson, Mastaba's General Manager, expressed concern over the price of the test kitchen, and informed Lamb Weston that in order to make such an investment, it would need a long-term contract. *Id.* ¶ 17. According to Mr. Johnson's declaration, Mr. Neal responded that Mastaba's "long term position as Lamb Weston's broker is secure" and if Mastaba made the investments, he "would get Mastaba a long term contract." *Id.* ¶ 19.

Mastaba proceeded to undertake the capital investments, building a test kitchen over the course of 2011. ECF No. 33 ¶ 8; ECF No. 42. Lamb Weston oversaw much of the test kitchen's planning and construction. ECF No. 49 ¶¶ 22-30. On February 28, 2011, Mr. Neal, in an e-mail to Mr. Johnson, instructed Mastaba to "build a professional looking kitchen." ECF No. 49, Ex. A. Mr. Neal then directed Mastaba to buy a commercial 50lb fryer and daylight florescent lights. *Id.* In response, Mr. Johnson inquired from Mr. Soh the reason for the purchase of such an expensive model for a fryer, and Mr. Soh replied because "it is a long term investment." ECF No. 49 ¶ 8. In addition to other specific requests, Lamb Weston

requested Mastaba send weekly reports informing Lamb Weston of details on the test kitchen's progress. *Id.*, Ex. F.  Mr. Soh also forwarded an e-mail exchange relating to the test kitchen between Mr. Johnson and he to Mr. Neal and Mr. Howe writing, "not bad, he is working fast now…" *Id.*

In an e-mail written on June 5, 2011, Mr. Neal congratulated Mastaba on its good work, ending with "we look forward to your continued support for the year of 2011/2012 & many more years…"  ECF No. 49, Ex. P.

On September 7, 2011, as a result of the completion of the test kitchen, Mr. Johnson sent Mr. Neal a letter regarding the long-term contract as one for a term of five years.  ECF No. 51 ¶ 17; ECF No. 49, Ex. R.   Mr. Neal responded in agreement, saying the letter "accurately states the current state of affairs."  ECF No. 49, Ex. S.  However, Mr. Neal indicated to Mr. Johnson that he may not possess the authority to enter into a 5-year agreement, stating "I do not know if we can do a 5-year agreement?  Don't think ConAgra allows such with its brokers/agents?"  ECF No. 49, Ex. S.  Mastaba contends this was the first time it had heard Mr. Neal lacked such authority.  ECF No. 49 ¶ 71.

In November 2011, Lamb Weston offered three iterations of a limited term service agreement.  Mastaba contends these new agreements had less favorable terms for Mastaba than the previous service agreements.  *Id.* ¶ 56. The proposed agreements reduced commission from 2.1% to 1% and deprived Mastaba of commission on post termination sales.  *Id.*  One agreement would also have allowed termination without

1   cause after sixty days.   ECF No. 49, Ex. T.   Mastaba contends these

2   agreements would have made its business unprofitable.   ECF No. 51 ¶

3   9.

4        On April 25, 2013, Mastaba filed this lawsuit.   It asserts

5   claims of breach of contract, promissory estoppel, quantum meruit,

6   unjust enrichment, negligent misrepresentation, and fraud.   ECF No. 1.

7        Lamb Weston filed a motion for partial summary judgment, ECF No.

8   32, on March 10, 2014.   Mastaba filed a motion for partial summary

9   judgment, ECF No. 49, on March 17, 2014, and a Motion from Limitation

10  on Requests for Production on March 12, 2014.

                    **II.      Summary Judgment Standard**

12       Summary judgment is appropriate if the record establishes "no

13  genuine dispute as to any material fact and the movant is entitled to

14  judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The party

15  opposing summary judgment must point to specific facts establishing a

16  genuine dispute of material fact for trial.   *Celotex Corp. v. Catrett,*

17  477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*

18  *Corp.,* 475 U.S. 574, 586-87 (1986).   If the non-moving party fails to

19  make such a showing for any of the elements essential to its claim for

20  which it bears the burden of proof, the trial court should grant the

21  summary judgment motion.   *Celotex Corp.,* 477 U.S. at 322.

                **III.   Lamb Weston's Motion for Summary Judgment**

23       Lamb Weston requests partial summary judgment for dismissal of

24  Mastaba's claims for damages related to a) an unwritten long-term

25  contract, b) future sales or services beyond 2011 service agreement,

26

and c) Mastaba's 2011 operating expenses and capital investments.  ECF No. 32.

**A.    Damages Relating to Unwritten Long-Term Contract**

At the heart of Lamb Weston's motion for partial summary judgment is whether there is sufficient evidence that Lamb Weston informed Mastaba it would enter into a long-term contract in exchange for Mastaba building a test kitchen and making other capital investments.  Mastaba's claims rely on occurrence of this commitment during this discussion.  ECF No. 1.  Lamb Weston requests summary judgment on any damages relating to this discussion, asserting there is no evidence of any such promise or agreement being made and that any discussions were merely mutual expressions of an expectation of a long-term business relationship.

In addition to Mr. Johnson's declaration detailing multiple oral conversations of a promise,[3] the existence of such a promise or agreement is supported by e-mails between Mastaba and Lamb Weston. For example, e-mails from Mr. Soh and Mr. Neal indicate that Lamb Weston took a hands-on approach to the test kitchen's development, directing Mastaba to take specific actions for its construction and providing consistent input over meticulous details. ECF No. 49, Ex. A-F. Further, Mastaba spent a year's worth of gross revenue to construct the test kitchen. ECF No. 48 ¶ 9. Mastaba's performance based on the

---

[3]    Lamb Weston argues that this evidence is inadmissible hearsay. However, this statement qualifies as a statement of party admission.  Fed. R. Evid. 801(d)(2).

1    alleged discussions is evidence of such an agreement, as is Lamb

2    Weston's awareness and approval that such a significant investment was

3    being made.

4         The Court now turns to Lamb Weston's affirmative defenses and

5    Mastaba's claims relating to the promise or agreement for a long-term

6    contract which will be analyzed separately.

7    **1.    Statute of Frauds**

8         Lamb Weston contends that enforcement of the promise for a long-

9    term contract would violate the statute of frauds.

10        The statute of frauds is governed by RCW 19.36.010:

11            In the following cases, specified in this section, any
              agreement, contract, and promise shall be void, unless such
12            agreement, contract, or promise, or some note or memorandum
              thereof, be in writing, and signed by the party to be
13            charged therewith, or by some person thereunto by him or
              her lawfully authorized, that is to say: (1) Every
14            agreement that by its terms is not to be performed in one
              year from the making thereof.

15   RCW 19.36.010

16        The Washington Supreme Court addressed similar facts in *Klinke*

17   *v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255 (1980). Klinke

18   brought action against Famous for breach of an oral contract that

19   Famous would register and issue a franchise agreement to Klinke. *Id.*

20   at 257. Famous raised the statute of frauds as a defense. *Id.* at 258.

21   Klinke countered by pleading promissory estoppel. *Id.* The Washington

22   Supreme Court ruled, "a party who promises, implicitly or explicitly,

23   to make a memorandum of a contract in order to satisfy the statute of

24   frauds, and then breaks that promise, is estopped to interpose the

25   statute as a defense to the enforcement of the contract by another who

26

relied on it to his detriment." *Id. (*citing *In re Estate of Nelson,* 85 Wn.2d 602 (1975)). *See also BKWSpokane v. FDIC,* 12-CV—521-TOR (E.D. Wash. 2013).

As discussed, there is a genuine issue of material fact as to whether Lamb Weston broke an oral contract or promise to enter into a five-year written contract. If that question is resolved in favor of Mastaba, Lamb Weston would be estopped from asserting the statute of frauds as a defense to the oral contract under *Klinke*. Further, as indicated by the parties' prior dealings, such a contract would have been entered into within the year, which would have fulfilled performance of the parties' alleged agreement within the year. ECF No. 40, Exs. F-I. Lamb Weston's motion for summary judgment is denied in this regard.

**2.   Promissory Estoppel**

Mastaba asserts a claim for promissory estoppel on the basis of the alleged promise for a long-term contract. Lamb Weston seeks summary judgment in its favor on this claim.

To obtain recovery in promissory estoppel, Mastaba must establish "(1) a promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *Corbit v. J. I. Case Co.,* 70 Wn.2d 522, 538 (1967) (citation omitted). A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as

to justify a promisee in understanding that a commitment has been made." *Havens v. C & D Plastics,* 124 Wn.2d 158, 172 (1994).

Lamb Weston argues that its alleged statements do not constitute a clear and defined promise sufficient for a promissory estoppel claim, but were merely confirming the expectation of a long-term, mutually satisfactory relationship. In support, Lamb Weston cites to *Havens v. C & D Plastics,* 124 Wn.2d 158 (1994). In *Havens*, a fired employee brought suit on a claim of promissory estoppel, alleging that the employer made a number of statements that amounted to a promise that the plaintiff could only be fired for just cause. *Id.* The Washington Supreme Court found no promise on the basis that the statements were typical of those made in the job application and hiring process. *Id.* at 174. The court reasoned that parties in such situations naturally want a "long term relationship" of employment. *Id.*

Lamb Weston's reliance on *Havens* is misplaced. The Washington Supreme Court specifically qualified, "*where the terminable at will doctrine is concerned*, the promise for promissory estoppel must be a 'clear and definite promise.'" *Id.* (emphasis added). This matter does not involve an employment relationship. Further, the interaction relating to construction of a test kitchen is not a "typical" exchange between business associates; rather, it was specific to each party's unique circumstances and required significant detriment on behalf of Mastaba equaling a year's worth of Mastaba's revenue. ECF No. 48 ¶ 9.

Mastaba in turn cites to *Hellbaum v. Burwell & Morford*, 1 Wn. App. 694 (1969). In *Hellbaum*, the Washington appeals court held "the

doctrine of promissory estoppel has been applied to render enforceable a gratuitous or somewhat indefinite promise to obtain insurance." *Id.*

This Court accepts that, if proven, a promise for a long-term contract in exchange for specific capital investments is definitive enough to support a promissory estoppel claim. Further, if as Mastaba contends that but for this promise, the capital investments would not have been undertaken, ECF No. 49 ¶¶ 8-20, then this reliance could be justifiable on account of the respective parties' long-term business relationship and Lamb Weston's oversight of the construction and planning of the test kitchen. ECF No. 49 Exs. A-F. The Court finds there is a factual dispute as to each of the first four elements of a promissory estoppel claim as well as the fifth and final element: whether injustice can be avoided without enforcing the promise. Lamb Weston's motion for summary judgment is denied in this regard.

**3.   Mastaba's Claim for Fraud Pursuant to Promise of Long-Term Contract[4]**

Mastaba additionally seeks damages for fraud on the basis that Lamb Weston knowingly communicated false, material information to Mastaba that it would be its long-term sales representative.

To recover for fraud, the following elements must be proved by clear, cogent, and convincing evidence:

---

[4]   Although Mastaba's arguments for fraud are primarily addressed in this section, they may also be relevant to Lamb Weston's defense under the Independent Duty Doctrine in Section B.

(1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; [and] (9) his consequent damage.

*Markov v. ABC Transfer & Storage Co.,* 76 Wn.2d 388, 394 (1969).

Lamb Weston cites to *Shook v. Scott*, 56 Wn.2d 351 (1960), to support its argument that the alleged assurance of a long-term relationship was not a representation of existing fact but a prediction. ECF No. 32. In *Shook*, the Washington Supreme Court stated that predictions, without an express or implied undertaking to make them come true, do not constitute such representations or promises as will support actionable fraud. 76 Wn.2d at 362-63.

The Washington Supreme Court in *Markov* stated two theories in which the rule that mere predictions do not necessarily constitute representations is inapplicable. *Markov,* 76 Wn.2d at 396. The first, "if a promise is made for the purpose of deceiving and with no intention to perform, it constitutes such fraud as will support an action for deceit." *Id*. Additionally, "if the promise is made without care or concern whether it will be kept, and the promisor knows or under the circumstances should know that the promisee will be induced to act or refrain from acting to his detriment, the promise will likewise support an action by the promisee." *Id.*

Disputed evidence indicates that Lamb Weston was seeking direct solicitation with Philippine purchasers while simultaneously directing

ORDER – 11

and overseeing Mastaba's construction of the test kitchen.[5] Further, despite Mr. Neal informing Mastaba he would "look into" a five-year contract, Mr. Neal did not ask for a long-term agreement from another Lamb Weston employee, but only a standard broker agreement. ECF No. 51 ¶ 17; & ECF No. 51 Ex. X.

Alternatively, evidence additionally supports that Mr. Neal made a promise that induced Mastaba to take actions to Mastaba's detriment without care for whether it was kept. Despite Mr. Neal's alleged promise of a long-term contract, Mr. Neal may not have had the authority to enter into such a contract. ECF No. 51 ¶ 1 & ECF No. 49 ¶ 55. Mr. Johnson contends that it wasn't until September 9, 2011, that Mr. Neal revealed this lack of authority. *Id*. This was after Mr. Neal had worked closely with Mastaba on the construction of the test kitchen. *Id*.

Thus, this Court finds sufficient evidence to present a genuine issue of material fact as to whether Lamb Weston committed fraud. Accordingly, Lamb Weston's motion for summary judgment is denied in this regard.

---

[5] During long-term contract negotiations, Mr. Neal wrote in an e-mail to Mastaba "our intent is to directly service accounts that request it but we can deal with this on an annual basis each year as we work to renew for the upcoming year." ECF No. 51, Ex. W. Mastaba additionally alleges Lamb Weston had engaged directly with Philippine purchaser "PTC" to avoid paying commission to Mastaba. ECF No. 51 ¶ 13.

**4.    Obligation to Negotiate in Good Faith**

Lamb Weston contends that Mastaba's assertion of an alleged oral promise that Lamb Weston would "enter into a written, long-term sales representation contract," even if assumed for arguendo purposes, is an agreement to agree which is unenforceable in Washington.

Both Mastaba and Lamb Weston cite heavily to *Keystone Land & Development v. Xerox Corp.* 152 Wn.2d 171 (2004), in support of their positions.    In *Keystone*, the Washington Supreme Court distinguished between an unenforceable agreement to agree and an enforceable contract to negotiate.    *Id.*    In the latter, "when a contract has been formed, Washington courts have recognized that there can be a contractual obligation to negotiate further agreements in good faith." *Id.* at 174. Forming a contract to negotiate requires mutual assent to be bound with sufficiently definite terms supported by consideration. *Id.* at 178.    Mutual assent to be bound is typically a question of fact for the fact finder.    *Id.*

As discussed, whether the parties had reached the required terms to form a contract to negotiate in good faith remains a question of fact.    Moreover, the evidence that indicates Mr. Neal never attempted to arrange for this long-term contract would constitute a breach to negotiate the further terms in good faith.    ECF No. 51 ¶ 17–20 & Ex. X.    Lamb Weston's motion to dismiss Mastaba's claim for a breach of a contract to negotiate in good faith as a matter of law is denied.

///

//

/

ORDER – 13

**B.   Mastaba's Claims Relating to its 2011 Expenses and Capital Investments and Future Sales or Services Beyond 2011 Service Agreement**

Lamb Weston argues that summary judgment dismissal of Mastaba's claims for damages relating to its 2011 capital investments and future sales or services is proper because the 2011 service agreement expressly controls the disputes. First, Lamb Weston argues that the 2011 agreement terminated by its own terms on December 31, 2011, which precludes any damages for future sales.[6]  Next, Lamb Weston points to the following portions of the 2011 service agreement which it contends explicitly resolve Mastaba's claims for damages relating to capital investments and operating expenses:

> [Mastaba] shall also be responsible and liable for any and all expenses incurred by [Mastaba] while performing the Services.  Extraordinary expenses (such as sales shows, meetings outside the Philippines and customers' factory visits) that are pre-approved by me in writing and in advance will be reimbursed by LW.

ECF No. 1, Ex. A.

> [t]his Agreement represents the entire agreement between LW and [Mastaba] and also supersedes all prior negotiations, representations or agreements, either written or oral.

*Id.*

---

[6]  The 2011 service agreement states in pertinent part, "effective as of January 1, 2011, and shall terminate on December 31, 2011 unless extended by a written agreement signed by both parties at least ninety (90) days before the termination." ECF No. 1, Ex. A.

ORDER – 14

However, Mastaba argues it has claims that would warrant damages arising independently of this 2011 service agreement that create a question of fact. Further, Mastaba alleges that dealings between the parties created a separate implied in fact contract to which the 2011 service agreement's terms would be inapplicable.

### 1.    Negligent Misrepresentation Independent of Contract

Mastaba makes a claim for negligent misrepresentation independent of the 2011 service agreement relating to damages incurred from its capital investments. ECF No. 1 ¶¶ 90-93. Lamb Weston seeks dismissal of this claim on the basis of the independent duty doctrine.

The independent duty doctrine was formerly called the "economic loss rule." *Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 165 (2012). This rule barred "recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses. If the economic loss rule applies, the party will be held to contract remedies, regardless of how the plaintiff characterizes the claims." *Alejandre v. Bull,* 159 Wn.2d 674, 683 (2007). The Washington Supreme Court has recently pronounced the economic loss rule a "misnomer" and has adopted in its stead the "independent duty doctrine." *Jackowski v. Borchelt*, 174 Wn.2d 720, 729 (2012). The present test is "whether the injury is traceable also to a breach of a tort law duty of care arising independently of the contract." *Eastwood v. Horse Harbor*, 170 Wn.2d at 380, 393 (2010).

The Washington Supreme Court stated "in Eastwood we directed lower courts not to apply the [independent duty] doctrine to [bar] tort remedies 'unless and until this court has, based upon

considerations of common sense, justice, policy and precedent, decided otherwise.'" *Elcon Const., Inc.,* 174 Wn.2d at 157, (quoting *Eastwood,* 170 Wn.2d at 417). *See also Donatelli v. D.R. Strong Consulting Engineers, Inc.,* 179 Wn.2d 84, 95 (2013) (Washington Supreme Court held a "duty to avoid misrepresentations that induce a party to enter into a contract arises independently of the contract.").

Based on the foregoing authority, this Court finds Mastaba's claim of a duty not to engage in negligent misrepresentation arises independently of the 2011 service agreement. The prior discussion relating to fraud also applies here to the extent that a claim for fraud may arise independent of a contract. *See Flower v. T.R.A. Industries, Inc.*, 127 Wn. App. 13 (2005) (holding that a plaintiff is able to base a claim on negligent misrepresentation when a promise is made with no intention of performing).

Although Lamb Weston did not address the merits of Mastaba's negligent misrepresentation claim in its initial motion for summary judgment, Mastaba contends that Lamb Weston has liability because Mr. Neal lacked the authority to commit Lamb Weston to a long term engagement with Mastaba. ECF No. 44. Lamb Weston's motion for summary judgment dismissal of Mastaba's claim for negligent misrepresentation is denied.

### 2.   **Mastaba's Quantum Meruit and Unjust Enrichment Claims**

Mastaba seeks damages on claims of quantum meruit and unjust enrichment. While Washington courts historically used quantum meruit and unjust enrichment synonymously, the Washington Supreme Court has recently clarified that they are legally distinct, with "distinct

approaches founded on discrete legal theories." *Young v. Young*, 164 Wn.2d 477, 483 (2008). These claims will be addressed separately for purposes of this motion.

        **a.   Unjust Enrichment**

Mastaba claims it is entitled to unjust enrichment because it conferred a benefit to Lamb Weston by 1) negotiating sales and sales contracts on its behalf, and 2) establishing the Philippine frozen potato market which Lamb Weston took advantage of by engaging in direct sales to Philippine purchasers. ECF No.1 ¶¶ 83-85.

Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it. *Young,* 164 Wn.2d at 484. The elements that must be proven by the plaintiff are 1) the defendant receives a benefit, 2) the received benefit is at the plaintiff's expense, and 3) the circumstances make it unjust for the defendant to retain the benefit without payment. *Id.*

Lamb Weston contends that unjust enrichment does not apply because the 2011 service agreement covers the dispute. Specifically, Mastaba was to provide "certain services during the term of this Agreement in the field of frozen potato sales and marketing, forecasting and order coordination in the Philippines, as reasonably requested and defined by [Lamb Weston]." ECF No. 1, Ex. A. Similar provisions existed in the one-year service agreements between Lamb Weston and Mastaba from 1998-2010. ECF No. 34, Ex. 1A-1M.

Because Mastaba and Lamb Weston were in a contractual relationship relating to Mastaba selling Lamb Weston potato products

in the Philippines from 1998-2011, Mastaba may not make an unjust enrichment claim relating to "establishing the potato market." *See Chandler v. Wash. Toll Bridge Auth.,* 17 Wn.2d 591, 604 (1943) (finding no contract implied in law because it related to an expressed contract plaintiff was operating under when performing services to which he based unjust enrichment claim). Establishing the market was necessarily done pursuant to Mastaba's service agreements with Lamb Weston for which Mastaba received payment. Finally, Mastaba does not have an unjust enrichment claim for "negotiating sales and sales contracts" due to this Court's decision holding Lamb Weston liable to pay commission for sales negotiated under the 2011 service agreement. Accordingly, Lamb Weston's motion for partial summary judgment requesting dismissal of Mastaba's unjust enrichment claims is granted.

### b. Quantum Meruit

Mastaba requests quantum meruit because Lamb Weston requested Mastaba make capital investments, Mastaba expected payment or exchange of value in return, and Lamb Weston failed to pay for said investments.[7] Lamb Weston seeks summary judgment in its favor on this claim.

---

[7] Mastaba makes an additional quantum meruit claim on the basis of negotiating sales and sales contracts on Lamb-Weston's behalf for which it failed to make payment. ECF No. 1 ¶¶ 73-77. This claim is not considered in light of this Court's decision holding Lamb Weston liable for payment of commission relating to sales made pursuant to the 2011 service agreement.

1    Quantum meruit is the method of recovering the reasonable value

2  of services provided under a contract implied in fact. *Young*, 164

3  Wn.2d at 485.  The elements of an implied in fact contract are 1) the

4  defendant requests work, 2) the plaintiff expects payment for the

5  work, and 3) the defendant knows or should know the plaintiff expects

6  payment for the work.  *Id.* at 486.

7    Lamb Weston contends the 2011 service agreement covers the

8  dispute which cannot be negated by a contract implied in fact.

9  However, "the conduct of one or more parties to an express contract

10 may be such that performance is removed from the confines of the

11 express contract." *Pierce County v. State,* 144 Wn. App. 783, 830

12 (2008). *See also Modern Builders, Inc. of Tacoma v. Manke,* 27 Wn. App.

13 86 (1980) (allowing quantum meruit claim when parties' conduct was

14 removed from express contract).

15    The 2011 service agreement has no mention of a test kitchen.

16 ECF No. 1, Ex. A.  Mastaba alleges Lamb Weston never before requested

17 such a significant investment in its years of prior dealings.  ECF No.

18 51.  Further, despite the provision in the 2011 service agreement

19 relating to Mastaba's services being within its "sole control and

20 discretion," ECF No. 1, Ex. A, Lamb Weston was heavily involved in the

21 process of overseeing and directing the construction of the test

22 kitchen.  ECF No. 49, Exs. A-F (e-mail exchanges between Mastaba and

23 Lamb Weston detailing Lamb Weston's directions on what to order, and

24 requesting weekly updates).

25    There is sufficient evidence that the parties deviated from

26 their 2011 service agreement in the construction of the test kitchen,

creating a factual dispute as to whether an implied in fact contract existed. *See Kilthau v. Covelli*, 17 Wn. App. 460, (1977) (holding that an existence of an implied contract is a question for the trier of fact). Lamb Weston's request for dismissal of Mastaba's quantum meruit claims is denied in this regard.

**C.   Conclusion**

In light of the foregoing analysis, Lamb Weston's motion for partial summary judgment is denied in part and granted in part. There are genuine issues of fact relating to whether Lamb Weston gave assurances that a long-term contract would be given to Mastaba in exchange for capital investments. The existence of this promise or agreement would support damages arising from claims for breach of contract, promissory estoppel, and fraud.

Further, Mastaba has established a genuine issue of fact as to whether the parties deviated from the 2011 service agreement by allegedly requesting and then overseeing the construction of a test kitchen, which creates a question of fact for a quantum meruit claim. However, Mastaba's unjust enrichment claim seeks recovery based on establishing the potato market, which is not distinct from Mastaba's duties under applicable contracts, and is therefore dismissed as a matter of law.

### IV.   Mastaba's Motion for Summary Judgment

Mastaba requests partial summary judgment on the issue of liability for amounts owed under the 2011 service agreement. The parties disagree as to the particular sales for which Lamb Weston must pay fees to Mastaba under this agremeent.

**A.    Background**

The 2011 service agreement's effective term dates were from January 1, 2011, through December 31, 2011.    The 2011 service agreement did not specifically address payment of post-termination sales fees. The applicable portions of the 2011 service agreement are:

> Services:  [Mastaba] will perform services during the term of this Agreement in the field of frozen potato sales and marketing, forecasting and order coordination in the Philippines, as reasonably requested and defined by myself, or my designee ("Services").
> Fees:   As full payment for the performance of [Mastaba's] Services and the other agreements made herein, [Lamb Weston] will pay Mastaba a fee equal to 2.1%, per net pound of ALL non-McDonald's LW French fry sales delivered to the Philippines, upon receipt of invoice.   For example, the fee will be paid to [Mastaba] for sales to Jollibee, Leysam, Multi M, or other distributers developed by Mastaba.

ECF No. 40, Ex. A.

Mastaba, on behalf of Lamb Weston, negotiated sales contracts with IFFSI, QSR, and Jollibee foods in 2011 for the sale of Lamb Weston frozen potato products.   A contract was entered with IFFSI on October 6, 2011, for the sale of Lamb Weston products from November 1, 2011, through December 31, 2012.   All sales by Lamb-Weston to IFFSI in this period were made pursuant to the contract.

Mastaba, on behalf of Lamb Weston, negotiated a sales contract on October 11, 2011, for sale of Lamb Weston frozen potato products to QSR from November 1, 2011, through October 31, 2012.   In 2011 and 2012, Lamb Weston made sales pursuant to the QSR contract in excess of $3,281,8320.80.

Lamb Weston paid Mastaba for a limited number of sales made pursuant to the QSR and IFFSI contracts that were ordered in 2011 and

2012 and delivered to the Philippines in early 2012. Lamb Weston has not paid Mastaba for all other sales made pursuant to these contracts that were ordered and delivered in 2012.

The Jollibee contract was executed in December 2011 and covered all sales in 2012, and Lamb Weston made sales pursuant to this contract in excess of $3,613,116. Lamb Weston paid Mastaba for a limited number of sales made pursuant to the Jollibee sales contract that were ordered in 2011 and 2012 and delivered in 2012. Lamb Weston has not paid for all other sales pursuant to this sales contract that were ordered and delivered in 2012.

Mastaba negotiated a sale of Lamb Weston "mini crisscut French fries" to Jollibee to be shipped in 2012. Lamb Weston completed sale and shipment as provided by Mastaba's negotiation, but has not paid fees to Mastaba.

**B.    Authority and Analysis**

Mastaba argues that it is entitled to commission for the sales made through the contracts it negotiated under the procuring cause of sale doctrine.

"Under the procuring cause of sale doctrine, when a party is employed to procure a purchaser and does procure a purchaser to whom a sale is eventually made, that party is entitled to a commission regardless of who makes the sale." *Washington Professional Real Estate LLC v. Young*, 163 Wn. App. 800, 809 (2011) (citations omitted). Because the 2011 service agreement does not explicitly cover fees for post-termination sales made pursuant to the 2011 service agreement, ECF No. 1, Ex. A, a discussion of the procuring cause doctrine is

warranted.  *See Poggi v. Tool Research & Eng'g Corp.,* 75 Wn.2d 356 (1969) *(*applying procuring cause doctrine to post-termination sales because contract for commission of sales did not specify that the remittances need be received prior to termination).

Lamb Weston first argues that the procuring cause doctrine is inapplicable because Mastaba was not its broker, but instead was contracted for services as requested.  The Washington Supreme Court defines a broker as "one who is engaged for others, on a commission, to negotiate contracts relative to property with the custody of which he has no concern."  *Gile v. Tsutakawa,* 109 Wn. 366, 375 (1920).  More succinctly put, "a broker is a middle man between parties."  *Chambers v. Kirkpatrick*, 142 Wn. 630, 634 (1927).

In Lamb Weston's "brokerage documents" attached to Mr. Johnson's declaration, Mastaba is listed as "Broker 240."  *See* ECF No. 40, Exs. F-I.  In ECF No. 54 ¶ 22, Mr. Neal describes Mastaba as its "broker." Mastaba is additionally described as a "broker" in an e-mail exchange between Lamb Weston employees.  ECF No. 50, Ex. C.    Finally, Mastaba's role is indicative of a broker relationship, as it acted as the "middle man" between Philippine buyers and Lamb Weston, in which it negotiated the sales contracts.  ECF Nos. 21 & 39.  The facts conclusively indicate Mastaba operated under a "broker" arrangement for Lamb Weston.

Lamb Weston next argues that even if Mastaba was its broker, Mastaba was not the procuring cause of the sales at issue because Mastaba had a limited negotiation-based role.  "A broker is a procuring cause of a sale if it sets in motion a series of events

culminating in the sale and, in doing so, accomplishes what the broker undertook under the agreement." *Wash. Prof'l Real Estate LLC v. Young,* 163 Wn. App. 800, 810 (2011).

Lamb Weston has admitted that its 2012 sales contracts with IFFSI, QSR, and Jollibee were entered into pursuant to negotiations with Mastaba acting at Lamb Weston's direction. ECF No. 21 ¶¶ 38, 42, & 46. Lamb Weston's payment of fees to Mastaba after the 2011 service agreement expired runs counter to its argument that the end of the 2011 term ends a requirement to pay Mastaba fees. Mastaba arranged for the sales and should not be precluded from the fees pursuant to the 2011 service agreement merely because the delivery took place in 2012. Thus, Mastaba as a matter of law was the procuring cause of the 2012 sales made pursuant to the three at issue contracts, in addition to the sale of "crisscut fries" to Jollibee in 2011 separate from the Jollibee contract. Mastaba is entitled to the applicable fees pursuant to the 2011 service agreement for these sells.

Mastaba's motion for partial summary judgment that Lamb Weston is liable for amounts owed under their 2011 brokerage contract is granted.

## V. Mastaba's Motion for Relief from Limitation on Requests For Production

On October 15, 2013, this Court issued a Scheduling Order that "Requests for Production shall be <u>limited to 30 requests</u>, including subsections." ECF No. 26 (emphasis added). On March 12, 2014, Mastaba filed this motion for requested relief from the order limiting

ORDER - 24

Requests for Productions (RFPs) to allow it an additional seven RFPs. ECF No. 37.

## A.    Factual Background

On October 11, 2013, Mastaba issued a first set of RFPs on Lamb Weston.   The first set contained 45 RFPs seeking "shipping, accounting, and other related documents" concerning "Lamb Weston's failure to pay commission." ECF No. 37 at 3.   Mastaba claims this set did not address document production related to "issue 2." *Id*.   "Issue 2" regards the existence of a long-term business contract and Mastaba's claims of fraud, negligent misrepresentation, quantum meruit, promissory estoppel, and breach of a unilateral contract. *Id*.   Mastaba asserts that it did not include these in the first set because the existence of a long-term contract is a distinct claim from the breach of contract claim addressed in the first set and it was not aware a limitation would be placed.   *Id*.

Mastaba claims that RFPs 45-50 address issues of material fact since the RFPs "seek disclosure of documents related to Lamb Weston's misrepresentations and assurances that Mastaba's long-term position was secure and that Lamb Weston would provide a long term contract." ECF No. 37.   Mastaba additionally contends that RFPs 51 and 52 concern damages relating to Lamb Weston's sales volume in the Philippines after Mastaba's brokerage agreement was terminated.

As is set forth below, Lamb Weston requests a denial for the additional RFPs.

//

/

**B.    RFPs 46–50**

Lamb Weston contends that the additional RFPs 46–50 would be repetitive and are unnecessary. RFPs 46–50 read as follows:

> RFP 46: Provide all documents that refer or relate to the construction of the Test Kitchen by Mastaba.
> RFP 47: Provide all documents that refer or relate to Lamb Weston's entry into a long term business relationship with Mastaba.
> RFP 48: Provide all documents that refer or relate to Defendants' efforts to negotiate a multi-year contract with Mastaba beginning on or about January 1, 2012.
> RFP 49: Provide all documents that refer or relate to the February 18, 2011, meeting between Kenneth Soh, Michael Neal and Patrick Johnson.
> RFP 50: Provide all documents that refer or relate to Lamb Weston's desire that Mastaba increase its business investments in 2011, including but not limited to any documents received or reviewed by Kenneth Soh or Michael Neal prior to their meeting with Patrick Johnson on February 18, 2011.

ECF No. 37

Federal Rule of Civil Procedure 34 allows a party to request documents "within the scope of Rule 26(b)." Rule 26(b)(1) outlines the scope of discovery to be "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, courts maintain broad discretion to limit discovery, even when the materials are within the scope of Rule 26(b). Fed. R. Civ. P. 26(c). To determine whether discovery is appropriate requires a balancing of plaintiff's need for the information and the possible prejudice to defendant if discovery is allowed. *Vollert v. Summa Corp.*, 389 F.Supp. 1348, 1351 (D. Haw. 1975).

While Mastaba clearly outlines why it needs the information, ECF No. 37 at 4, Lamb Weston did not explain why the information sought is burdensome. ECF No. 44. As the Advisory Committee Notes to the 2006

Amendment to Rule 26 point out, "the responding party must show that the identified sources of information are not reasonably accessible because of undue burden or cost." Fed R. Civ. P. 26 Advisory Notes (2006). Further, Lamb Weston states that it is already performing another search relating to additional documents that pertain to the RFPs 46-50 request, which is indicative of a low burden.  ECF No. 44 at 2.

Considering the complex nature of Mastaba's claims, the multiple annual service agreements spanning over years, and various third-party client business transactions in dispute, a large set of RFPs appears reasonable.  Moreover, separating the specific 2011 disputes from the documents that relate to long-term business relationships is reasonable due to the distinct nature of the claims involved. Mastaba's requested additional RFPs 46-50 are granted.

**C.   RFPs 51 and 52**

Mastaba contends the RFPs 51 and 52 seek to address material facts relating to damages.  ECF No. 37 at 5.  The RFPs read as follows:

- RFP 51: Provide all accounting documents that evidence Lamb Weston's total sales volume of frozen potato products in the Philippines (excluding sales to McDonald's) from January 1, 2012, through March 12, 2014.
- RFP 52: Provide all documents that Lamb Weston has relied upon or will rely upon in projecting its future sales volume of frozen potato products in the Philippines.

ECF No. 37 at 5.

ORDER - 27

1    Lamb Weston argues that Mastaba's RFPs 51 and 52 relate to

2    claims that are not viable as a matter of law because none of

3    Mastaba's theories allow Mastaba to enforce against Lamb Weston an

4    unwritten long-term contract, as laid out in Lamb Weston's motion for

5    summary judgment. Given the foregoing decision denying Lamb Weston's

6    partial motion for summary judgment relating to an unwritten long-term

7    contract, Mastaba's requested additional RFPs 51 and 52 are granted.

8    It does not appear from the facts that Mastaba has acted in bad

9    faith or that it is abusing the discovery process in any way.  Mastaba

10   has shown that the information sought is critical to the issues in

11   contention.  Lamb Weston has not shown that the RFPs would be

12   burdensome, nor has it purported that the RFPs are overly broad

13   requests.  Mastaba's motion for relief from limitation on discovery is

14   granted.

15                        **VI.    CONCLUSION**

16   For the above-given reasons, **IT IS HEREBY ORDERED**:

17   1.   Lamb Weston's Motion for Partial Summary Judgment, **ECF No.**

18        **32**, is **GRANTED IN PART** and **DENIED IN PART** as follows:

19   •    Lamb Weston's request for dismissal of damages relating

20        to an unwritten long-term contract is **DENIED**.

21   •    Lamb Weston's request for dismissal of all Mastaba's

22        claims for damages under a theory of unjust enrichment

23        is **GRANTED**.  Dismissal of Mastaba's other claims

24        relating to future sales or services is **DENIED**.

25

26

ORDER – 28

- Lamb Weston's request for dismissal of Mastaba's claims for damages for 2011 operating expenses and capital investments is **DENIED**.

2.  Mastaba's Motion for Partial Summary Judgment, **ECF No. 39**, is **GRANTED**.

- Lamb-Weston, Inc., ConAgra Foods, Inc., ConAgra Foods Lamb Weston, Inc., and Lamb-Weston Sales, Inc. (collectively, "Lamb-Weston") are liable to Mastaba in the amount of 2.1% per net pound for all sales made pursuant to the contract Lamb-Weston signed with International Family Foods Services, Inc. on or about October 6, 2011.

- Lamb-Weston is liable to Mastaba in the amount of 2.1% per net pound for all sales made pursuant to the contract Lamb-Weston signed with QSR/Express Commissary, Inc. on or about October 11, 2011.

- Lamb-Weston is liable to Mastaba in the amount of 2.1% per net pound for all sales made pursuant to the contract Lamb-Weston signed with Jollibee Foods Corporation on or about December 13, 2011.

- Lamb-Weston is liable to Mastaba in the amount of 2.1% per net pound for all sales of Mini Crisscut French fries to Jollibee Foods Corporation as provided by Mastaba's negotiation.

3.  Mastaba's Motion from Limitation on Requests for Production, **ECF No. 37**, is **GRANTED**. Mastaba is granted relief from the limitation on requests for production as stated in the Scheduling Order (ECF No. 26 ¶ 5(b)), and is permitted to propound the seven requests for production in the form attached as Exhibit B to the Declaration of Kyle J. Silk-Eglit, ECF No. 38, in Support of Plaintiff Mastaba Inc.'s Motion for Relief from Limitation on Requests for Production.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this ___27th___ day of May 2014.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2013\5049.cross.msjs.lc1.docx

ORDER – 30